**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD ASTON, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) **NO. 1:08-cv-10343-UA** ) |
| vs. | ) ) |
| | ) CLASS ACTION COMPLAINT |
| SADIA S.A., LUIZ FERNANDO FURLAN, GILBERTO TOMAZONI, ADRIANO LIMA FERREIRA, WELSON TEIXEIRA, JR., WALTER FONTANA FILHO and EDUARDO FONTANA D'AVILA, | ) ) ) **JURY TRIAL DEMANDED** ) ) |
| Defendants. | ) ) ) |

Plaintiff, Donald Aston ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Sadia S.A. ("Sadia" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal class action on behalf of purchasers of Sadia's American Depository Receipts ("ADRs" or "shares") between April 30, 2008 and September 26, 2008 inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Sadia is a refrigerated and frozen protein products company that offers processed products, poultry, and pork in Brazil.  The Company's activities include production, distribution, marketing and exporting of refrigerated and frozen food products.

3.      On September 25, 2008, the Company shocked investors when it announced that it had suffered losses of R$760 million (U.S. $410 million) due to investments in currency contracts hedging against the U.S. dollar.  The *Associated Press* reported that the Company's losses on these contracts were likely greater than the Company's earnings for 2008. The following day, the Company announced that its Chief Financial Officer ("CFO") had been dismissed.

4.      Upon the release of this news, the Company's shares fell $5.77 per share, or 37.79 percent, to close on September 26, 2008 at $9.50 per share, on unusually heavy trading volume. The Company's shares continued to fall the following trading day as the news continued to reach the marketplace, declining an additional $1.51 per share, or 15.89 percent, to close on September 29, 2008 at $7.99 per share, again on unusually high trading volume.

5.      Subsequently, on October 6, 2008, the Company announced that its Chairman and Vice Chairman had resigned.

6.      On this news, the Company's shares continued to decline, closing at $7.75 per share and $6.47 per share on October 6, 2008 and October 7, 2008, respectively.

7.      The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being, business relationships, and prospects.  Specifically, defendants failed to disclose or indicate the following: (1) that the Company had entered into currency derivative contracts that were unnecessary, too large, and in clear violation of the Company's hedging policy; (2) that the Company's exposure to currency

contracts was not "nominal," but rather extremely large and speculative; (3) that the Company lacked adequate internal and financial controls; (4) that the Company's financial statements, by not accounting for Sadia's exposure to currency market fluctuation, were materially false and misleading at all relevant times; and (5) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

8.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

11.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Sadia's shares trade on the New York Stock Exchange ("NYSE") in this Judicial District.

12.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.     Plaintiff, Donald Aston, as set forth in the accompanying certification, incorporated by reference herein, purchased Sadia's shares at artificially inflated prices during the Class Period and has been damaged thereby.

14.     Defendant Sadia is a Brazilian corporation with its principal executive offices located at Rua Senador Atilio, 86 Centro, Concordia, SC, Brazil.

15.     Defendant Luiz Fernando Furlan ("Furlan") was, at relevant times, Chairman of the  Company's Board of Directors.

16.     Defendant Gilberto Tomazoni ("Tomazoni") was, at all relevant times, the Company's Chief Executive Officer ("CEO") and a member of the Disclosure Policy Committee.

17.     Defendant Welson Teixeira, Jr. ("Teixeira") was, at relevant times, the Company's CFO, Controller, Administrative and Information Technology Director, as well as, Investor Relations Director.

18.     Defendant Adriano Lima Ferreira ("Ferreira") was, at relevant times, the Company's CFO.

19.     Defendant Walter Fontana Filho ("Filho") was, at relevant times, the Company's President and Chairman.

20.     Defendant Eduardo Fontana d'Avila ("d'Avila") was, at relevant times, the Company's Vice Chairman.

21.     Defendants Furlan, Tomazoni, Teixeira, Ferreira, Filho and d'Avila are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Sadia's reports to the SEC, press releases and presentations to securities analysts,

money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Sadia is a refrigerated and frozen protein products company that offers processed products, poultry, and pork in Brazil. The Company's activities include production, distribution, marketing and exporting of refrigerated and frozen food products.

### Materially False and Misleading
### Statements Issued During the Class Period

23.     The Class Period begins on April 30, 2008. On this day, the Company issued a press release, filed with the SEC on Form 6-K, which, in relevant part, stated:

> "The results of the first quarter of 2008 confirmed our expectations. *Gross revenues rose 20.3%, to R$ 2.6 billion,* and exports accounted for 46.7% of the revenues generated by the Company. The Company will proceed with its internationalization process, aware of the sales growth potential in the international market, having opened its first plant abroad, in Russia, and investing in the construction of its second unit overseas, in the Arab Emirates. The segment of processed food increased 15.8% in volume and 21.2% in revenues in relation to the same quarter in

the prior year. The growth in this segment is consistent with the Company's goals of improving the product mix, minimizing sanitary risks and ensuring a better profitability. The goal for the domestic market is to achieve penetration in all income levels of the Brazilian population. Investments of R$ 427.1 million were made in the quarter, out of a planned total of R$ 1.6 billion for the year, the highest amount in the history of Sadia. ***In the quarter, the Company had a growth of 3.9% in operating profit and 123.4% in net income, as compared with the 1Q07. The focus on the improvement of the operating cash generation (EBITDA) resulted in R$ 276.9 million and a margin of 12.1%,*** close to that obtained in the same period of the past year, in spite of the pressure due to the increase in the cost of grains. In view of the apprehension in relation to the cost of grains in 2008, the Company has concentrated its efforts in passing on costs, both in the domestic and in the foreign market, and in achieving productivity gains. We continue to be confident in our goal of doubling revenues within five years, based on the internationalization of our operations and on the growth in the domestic market, taking advantage of the competitive conditions of Brazil as a producer of animal protein. Certain that Sadia shall continue its path of success in the year that has just started, by ensuring the quality of its products, the sustainability of its initiatives and the maintenance of its credibility with investors, we wish to thank our associates for their dedication and talent, which contributed to the development of another important quarter in the history of this Company." – Gilberto Tomazoni – CEO, Managing Director

\*        \*        \*

***The financial result in the quarter was positive by R$ 36.8 million,*** while it was negative by R$ 6.4 million in 2007. ***Sadia financial result reflects the management of its financial assets and liabilities and the foreign exchange variations of its investments abroad, oriented to preserve assets and liabilities on a consolidated basis.*** [Emphasis added.]

24.    Also on April 30, 2008, Sadia filed its financial information with the SEC on Form 6-K.  At the time the 6-K was filed, the prevailing exchange rate was 1 Real to $0.57 U.S. dollars.  The Company's 6-K was signed by Defendant Teixeira, and reaffirmed the Company's financial results previously announced that same day.  Additionally, the Company stated:

The Company's operations that are exposed to market risks, mainly with respect to foreign currency variations, credit risks and

variations in the prices of agricultural commodities - corn, soy bean and derivatives. ***These risks are managed by the Risk Management area, through identification of exposures and correlations between the different risk factors, using the specific calculation method, VAR - Value at Risk and simulations of scenarios, and are permanently monitored by the Financial Committee and by the Commodities and Risk Management Committee, consisting of members of the Board of Directors, who are responsible for defining management's strategy for administering these risks, determining the limits for positions, exposure and authority for decision making. At March 31, 2008, the VAR-Value at Risk for the operational assets and liabilities and financial instruments exposed to exchange rate variations for one year with 95% confidence, amounted to R$187,711,*** representing 6.10% of shareholders' equity.

***a.  Exchange rate risk***

***The exchange rate risk for loans, financing and any other payables denominated in foreign currency is hedged by short-term investments denominated in foreign currency,*** with same interest rates, and by derivative financial instruments, such as rate swaps (dollar to CDI), interest rate swap contracts (Libor to pre-fixed or vice-versa) and future market agreements, in addition to foreign receivables from exports, which also reduce exchange variations by serving as a "natural hedge".

*        *        *

***The Company, within its hedge strategy, uses currency futures contracts (US dollars, Euros and Pounds), as a form of mitigating exchange rate risk over operating and financial assets and liabilities.*** The nominal amounts of these contracts are not recorded in the interim financial information. [Emphasis added.]

25.     On July 31, 2008, the Company issued a press release filed with the SEC on Form

6-K, which in relevant part stated:

"The rise in the international price of oil and the growth of the world economy drove the prices of agricultural commodities up in the first half of the year. The prices of corn and soybean, the main inputs in our industry, are approximately 33% and 50%, respectively, higher than those of the first half of 2007. The commodities price rise has caused a food inflation worldwide. In spite of the threat of a slowdown in the world economy, the business trend is favorable to Brazil and to Sadia´s businesses.

Even with this scenario of cost pressure, the results of the second quarter of 2008 were in line with Company expectations. ***Gross revenues in the period reached R$ 2.9 billion,*** an increase of 26.5%, when compared to those of the 2Q07. ***EBITDA reached R$ 271.5 million, 18.4% higher, with a margin of 10.5%.*** Sadia´s sales in the foreign market continue to be driven by strong demands and firm prices. An upturn may be observed in the mix sold in this market, such as the increase in the revenue brought by poultry cuts, of 72.1% in the 2Q08. In the domestic market, the segment of processed products, which accounted for around 80% of the revenues, exceeded the 2Q07 figures by 24.9%. To maintain a continued growth aligned with its strategy, Sadia invested R$ 952.7 million in the first half of this year, out of an estimated total of R$ 1.6 billion for the year, in actions geared to strengthen its expansion in the domestic market and the strategies for the globalization of its operations, in view of the competitive conditions of Brazil as a producer of animal protein. The Concórdia Banco operation has been approved and its purpose is to take advantage of the business opportunities and synergies provided by the value chain of the Sadia group. The Company acknowledges the competence of its associates, who ensure the strength of its brand and the high quality of its products, contributing to enhance the credibility of the Company with customers, shareholders, investors and suppliers. " – Gilberto Tomazoni – CEO

*       *       *

***Sadia's financial results reflect the financial management of its financial assets and liabilities as well as the foreign exchange variations of its investments abroad.***

***For the half year, the result was a positive amount of R$24.6 million*** while in 2007 it was a negative R$3.8 million. ***This result is obtained basically from two factors. First the decrease in interest on financial investments was due to a reduction in the nominal amount invested. Second the foreign exchange effect caused by the variation of the currency on the exposure of the assets and liabilities as well as effects from hedges.*** [Emphasis added.]

26.     Also on July 31, 2006, Sadia filed its financial report for the six-month period ended June 30, 2008 with the SEC on Form 6-K.  At the time the 6-K was filed, the prevailing exchange rate was 1 Real to $0.62 U.S. dollars.  The Company's 6-K was signed by Defendant

Teixeira, and reaffirmed the Company's financial results announced that same day.  Additionally,

the Company, in relevant part, stated:

### Risk management and financial instruments

The Company's operations that are exposed to market risks, mainly with respect to foreign currency variations, credit risks and variations in the prices of agricultural commodities - corn, soy bean and derivatives. ***These risks are managed by the Risk Management area, through identification of exposures and correlations between the different risk factors, using the specific calculation method, VAR - Value at Risk and simulations of scenarios, and are permanently monitored by the Financial Committee and by the Commodities and Risk Management Committee, consisting of members of the Board of Directors, who are responsible for defining management's strategy for administering these risks, determining the limits for positions, exposure and authority for decision making. At June 30, 2008, the VAR-Value at Risk for the operational assets and liabilities and financial instruments exposed to exchange rate variations for one year with 95% confidence, amounted to R$241,710,*** representing 7.68% of shareholders' equity (Information not reviewed).

### Exchange rate risk

***The exchange rate risk for loans, financing and any other payables denominated in foreign currency is hedged by short-term investments denominated in foreign currency,*** with same interest rates, and by derivative financial instruments, such as rate swaps (dollar to CDI), interest rate swap contracts (Libor to pre-fixed or vice-versa) and future market agreements, in addition to foreign receivables from exports, which also reduce exchange variations by serving as a "natural hedge".

The Company, within its hedge strategy, uses currency futures contracts (US dollars, Euros and Pounds), as a form of mitigating exchange rate risk over operating and financial assets and liabilities. ***The nominal amounts of these contracts are not recorded in the interim financial information.***  [Emphasis added.]

27.     The statements contained in ¶¶ 23-26 were materially false and misleading when

made because defendants failed to disclose or indicate the following: (1) that the Company had

entered into currency derivative contracts that were unnecessary, too large, and in clear violation

of the Company's hedging policy; (2) that the Company's exposure to currency contracts was not "nominal," but rather extremely large and speculative; (3) that the Company lacked adequate internal and financial controls; (4) that the Company's financial statements, by not accounting for Sadia's exposure to currency market fluctuation, were materially false and misleading at all relevant times; and (5) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

### The Truth Begins to Emerge

28.     On September 25, 2008, after the market closed, the Company shocked investors when it filed a Form 6-K with the SEC, signed by Defendant Teixeira, that stated the following:

> *The Finance Office (Diretoria Financeira) implemented certain transactions in the financial market, which transactions were related to the variation of U.S. Dollar against Real (Brazilian currency) in amounts above the purpose of protecting the activities of the Company exposed to exchange variation.*
>
> Given the severity of the international crisis, which worsened last week and due to the high volatility of the quote of the U.S. currency, which occurred very quickly, the Board of Directors (*Conselho de Administração*), having become aware of the implementation of such transactions, determined the adjustment of the exposure of the Company to standards of risks and limits established as part of its financial and exchange rate policies.
>
> *Accordingly, the Company decided to liquidate in advance certain financial transactions, which resulted in losses of approximately R$ 760,000,000.00.* [Emphasis added.]

29.     The next day, on September 26, 2008, Sadia filed another Form 6-K with the SEC signed by Defendant Teixeira.  Therein, the Company further revealed:

> SADIA S.A. ("Company") hereby announces that, on this date, its **Board of Directors decided to dismiss Mr. Adriano Lima Ferreira as Finance Officer.** The Board also decided that Mr. Welson Teixeira Júnior, currently Controller and Investors Relations

Officer, accumulates temporarily the function of Finance Officer. [Emphasis added.]

30.     Also on September 26, 2008, the *Associated Press* published an article entitled "Brazil's Sadia posts big loss on currency market."  The article, in relevant part, stated:

> One of Brazil's biggest food companies says it ***lost a year's worth of earnings on volatility in currency markets.***
>
> But officials at Sadia SA say they can cover the $406 million in losses with a short-term line of credit. No details on the credit deal were offered.
>
> ***Analysts say the $406 million loss is likely more than the company's earnings before interest and taxes for 2008. Sadia says it has fired its chief financial officer.***
>
> Sadia officials say volatility in the exchange market led to the loss.
>
> UBS Pactual says it forecasts Sadia's net debt for this year will be $1.4 billion. [Emphasis added.]

31.     On this news, the Company's shares fell $5.77 per share, or 37.79 percent, to close on September 26, 2008 at $9.50 per share, on unusually heavy trading volume.  The Company's shares continued to fall the following trading day as the news continued to reach the marketplace, declining an additional $1.51 per share, or 15.89 percent, to close on September 29, 2008 at $7.99 per share, again on unusually high trading volume.

32.     Finally, on October 6, 2008, the Company filed a Form 6-K with the SEC signed by Defendant Teixeira.  Therein, the Company, in relevant part, stated:

> In compliance with the provisions set forth in Paragraph 4 of Art. 157 of Law N. 6.404/76, SADIA S.A. (the "Company") announces to its shareholders and to the market that ***Mr. Walter Fontana Filho, Chairman, and Mr. Eduardo Fontana d´Avila, Vice-Chairman, presented their resignation letters as board members*** in the Extraordinary Board Meeting held on 10.06.2008. Sadia S.A. also announces that the resignations have been accepted by all members of the Board, which decided to nominate, ad referendum to the next General Shareholders Meeting, Mr. Luiz Fernando Furlan as responsible for the functions of Chairman. The Board

> also decided not to fill the vice-chairman vacant post and not to
> attribute its functions, for the time being, to any member.
> [Emphasis added.]

33.    On this news, the Company's shares continued to decline, closing at $7.75 per share and $6.47 per share on October 6, 2008 and October 7, 2008, respectively.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased Sadia's shares between April 30. 2008 and September 26, 2008, inclusive (the "Class Period") and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

35.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Sadia's shares were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Sadia or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

37.    Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in class and securities litigation.

38.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Sadia; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

40.    The market for Sadia's shares was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements, and failures to disclose, Sadia's shares traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Sadia's shares relying upon the integrity of the market price of Sadia's shares and market information relating to Sadia, and have

been damaged thereby.

41.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Sadia's shares, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.   Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.   As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Sadia's financial well-being and prospects. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Sadia and its financial well-being and prospects, thus causing the Company's shares to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's shares at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

43.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44.     During the Class Period, Plaintiff and the Class purchased Sadia's shares at artificially inflated prices and were damaged thereby.   The price of Sadia's shares significantly

declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Sadia, their control over, and/or receipt and/or modification of Sadia's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Sadia, participated in the fraudulent scheme alleged herein.

### Applicability of Presumption of Reliance:
### Fraud On The Market Doctrine

46.     At all relevant times, the market for Sadia's shares was an efficient market for the following reasons, among others:

> (a)     Sadia's shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

> (b)     As a regulated issuer, Sadia filed periodic public reports with the SEC and the NYSE;

> (c)     Sadia regularly communicated with public investors *via* established market communication mechanisms, including through regular

disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Sadia was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

47.     As a result of the foregoing, the market for Sadia's shares promptly digested current information regarding Sadia from all publicly-available sources and reflected such information in the price of Sadia's shares.  Under these circumstances, all purchasers of Sadia's shares during the Class Period suffered similar injury through their purchase of Sadia's shares at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular

forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Sadia who knew that those statements were false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Sadia's shares at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's shares in an effort to maintain artificially high market prices for Sadia's shares in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Sadia's financial

17

well-being and prospects, as specified herein.

53.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sadia's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Sadia and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Sadia's shares during the Class Period.

54.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

55.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sadia's financial well-being and prospects from the investing public and supporting the artificially inflated price of its shares.  As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Sadia's shares was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Sadia's shares were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the shares trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Sadia's shares during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that

Sadia was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Sadia shares, or, if they had acquired such shares during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's shares during the Class Period.

### SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

60.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.    The Individual Defendants acted as controlling persons of Sadia within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Sadia and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's shares during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 26, 2008                    Respectfully submitted,

                                            BRODSKY & SMITH, LLC

                                            By:*/s Evan J. Smith, Esquire*
                                            Evan J. Smith, Esquire
                                            esmith@brodsky-smith.com
                                            240 Mineola Blvd.
                                            Mineola, NY 11501
                                            516-741-4977
                                            516-741-0626 (fax)

                                            **BARROWAY TOPAZ KESSLER
                                            MELTZER & CHECK, LLP**
                                            D. Seamus Kaskela
                                            skaskela@btkmc.com
                                            David M. Promisloff
                                            dpromisloff@btkmc.com
                                            280 King of Prussia Road
                                            Radnor, PA 19087
                                            (610) 667-7706
                                            (610) 667-7056 (fax)

                                            **Attorneys for Plaintiff**